**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KRISTI M. B.,** | ) |
|        **Plaintiff,** | ) |
| vs. | )    Case No. 18-CV-484-JED-JFJ |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
|        **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Kristi M. B. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.**  **General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 35-year-old female, applied for Title II disability insurance benefits on October 3, 2016, alleging a disability onset date of August 31, 2015. R. 84, R. 243-244. Plaintiff claimed she was unable to work due to numerous conditions, including fibromyalgia, degenerative disc disease, bilateral plantar fasciitis, migraines, chronic bilateral ankle strain, bilateral patellofemoral pain syndrome, thoracolumbar spine strain, reversed cervical curve, carpal tunnel, and arthritis. R. 273. Plaintiff's claim for benefits was denied initially on January 10, 2017, and on reconsideration on March 14, 2017. R. 65-79. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on July 25, 2017. R. 59-64. Plaintiff did not appear or testify at that hearing, although her representative did appear and a vocational expert ("VE") testified. *Id.* The ALJ issued a decision on August 28, 2017, denying benefits and finding Plaintiff not disabled because she did not have a severe impairment or combination of impairments. R. 84-90. The Appeals Council remanded the case to the ALJ for further development of the record, finding that the ALJ had not properly established that Plaintiff had waived her right to appear at the hearing. R. 96-97.

On remand, the ALJ conducted a second hearing on April 3, 2018, at which Plaintiff appeared and testified. R. 30-58. On April 17, 2018, the ALJ issued a second decision, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 15-24. The Appeals Council denied review, and Plaintiff filed the pending appeal. R. 1-3; ECF No. 2.

3

In the second decision, the ALJ found that Plaintiff's date last insured was September 30, 2015, and that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of August 31, 2015, to her date last insured of September 30, 2015. R. 17. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and obesity. *Id.* He found that Plaintiff's impairments of fibromyalgia, bilateral ankle arthralgia, urinary incontinence, vitamin D deficiency, type 2 diabetes, insomnia, headaches, and intermittent abdominal pain/nausea were all controlled or treated conservatively with medication and were therefore non-severe. R. 18. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 18.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's father's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows: "[S]he can lift 20 pounds occasionally and 10 pounds frequently; is able to sit, stand or walk 6 hours out of an 8-hour day; occasionally climbing stairs, balance, bend, stoop, kneel, crouch and crawl; and is unable to climb ladders, ropes or scaffolds." R. 18. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 22-23. Based on the testimony of a VE, however, the ALJ found at step five that Plaintiff could perform other light exertion work, such as Office Helper, Small Products Assembler, and Electrical Accessories Assembler. R. 23. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 24. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.    Issues**

Plaintiff raises four points of error in her challenge to the denial of benefits, which the undersigned re-organizes into three: (1) the ALJ failed to properly consider Plaintiff's Department of Veterans Affairs ("VA") disability ratings; (2) the ALJ's consistency analysis was flawed; and (3) the ALJ failed to properly consider or account for Plaintiff's obesity.  ECF No. 17.

**IV.    Analysis**

    **A.    ALJ Reasonably Considered and Evaluated Plaintiff's VA Disability Ratings**

Plaintiff argues that the ALJ improperly assigned "little weight" to the VA's disability rating as of December 7, 2015 (just over one month following the date last insured).  The Commissioner is not bound by the disability finding of another administrative agency.  20 C.F.R. § 404.1504.  *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993).  Nonetheless, another agency's determination of disability "is evidence that the ALJ must consider and explain why he did not find it persuasive."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (citing *Baca*, 5 F.3d at 480).

Here, the ALJ discussed the VA's disability ratings as part of his RFC determination.  The ALJ noted that the VA gave Plaintiff a disability rating of 70%, paid at the 100% rate, effective December 7, 2015.  R. 21 (citing R. 270-271, 336-337, 464-470).  The ALJ commented that neither ratings from other agencies, nor opinions that a claimant is disabled, are binding on the Commissioner.  R. 21.  He then explained that he assigned little weight to the VA rating because it was "inconsisten[t] with the objective medical evidence, particularly the objective evidence during the period at issue . . . and the other opinion evidence of record, including the findings by the State Agency consultants."  R. 21.  The ALJ further noted that "the VA ratings of disability appear to relate to injuries/conditions prior to the alleged onset date of disability and there are no

5

records to support the impairments prior to the date last insured." *Id.* The ALJ's stated reasons for assigning "little weight" to the VA ratings were valid and supported by substantial evidence, and no more was required. *See* 20 C.F.R. § 404.1527(f)(2) (explaining that, when considering opinions from non-acceptable medical sources, ALJ should include sufficient analysis to allow a subsequent reviewer to follow the adjudicator's reasoning).

Plaintiff does not challenge the ALJ's finding that the VA rating was inconsistent with the objective and opinion evidence in the record.[1] Instead, she argues the ALJ committed reversible error based on the ALJ's second finding, that "the VA ratings of disability appear to relate to injuries/conditions prior to the alleged onset date of disability and there are no records to support the impairments prior to the date last insured." R. 21. However, the undersigned finds this reason is valid. The VA found Plaintiff had a number of "rated disabilities" – lumbosacral or cervical strain (20%), limited extension of knee (10%), limited motion of ankle (10%), flat foot condition (50%), and tinnitus (10%). R. 464. These conditions were distinct from the severe and non-severe medically determinable impairments found by the ALJ – degenerative disc disease, obesity, fibromyalgia, bilateral ankle arthralgia, urinary incontinence, vitamin D deficiency, type 2 diabetes, insomnia, headaches, and intermittent abdominal pain/nausea. R. 17-18 (citing R. 400).

Plaintiff contends, without support, that certain of the VA's rated disabilities "reasonably correspond" to the medically determinable impairments identified in the ALJ's decision. Specifically, she argues the VA-rated "lumbosacral or cervical strain" reasonably corresponds to her medically determinable impairment of "severe degenerative disc disease," and the VA-rated "limited motion of the ankle" reasonably corresponds to her medically determinable impairment

---

[1] This reason is itself sufficient to uphold the ALJ's conclusion regarding the VA rating. *See Lax v. Astrue*, 489 F.3d 1080, 1088-89 (10th Cir. 2007) (finding that ALJ's error in relying on an improper reason for invalidating claimant's IQ scores was harmless where ALJ identified other valid reasons for conclusion).

6

of "bilateral ankle arthralgia." ECF No. 17 at 3. However, as the Commissioner points out, a "strain" relates to ligaments while degenerative disc disease relates to musculoskeletal irregularities, and her "limited range of motion in the ankle" could be caused by anything, not necessarily "arthralgia" (joint pain). In other words, it was reasonable for the ALJ to find that the VA-rated impairments were not the same as those he identified as medically determinable.

Plaintiff further argues that her VA-rated knee impairment and bilateral foot condition were identified prior to the alleged onset date of August 31, 2015, and those problems "did not go away." ECF No. 17 at 4. However, the medical records Plaintiff cites in support of her long-standing knee condition actually demonstrate that her knee pain was "inactive" and "resolved" as of March 2013. R. 361, 895-896. As for her foot pain, Plaintiff cites medical records dated as late as September 2013, nearly two years before the alleged onset date. R. 672-673. The only later records Plaintiff cites consist of letters from Plaintiff's attorney discussing examinations that took place in 2011 and 2017, but those letters do not attach the relevant examination findings. R. 332, 339. Plaintiff points to no treatment records regarding either the knee or foot condition that date to or after the relevant period.

Moreover, Plaintiff's argument is undermined by the fact that, during the relevant time period, Plaintiff rated her health as "good," reported her plantar fasciitis was under control, and did not complain of knee or foot pain. R. 619 (September 3, 2015, VA internal medicine comprehensive exam). On the same date, a physical examination revealed steady gait, good muscle tone, adequate range of motion of extremities, and ability to tandem walk without difficulty. *Id.* Accordingly, it was reasonable for the ALJ to conclude that those knee and foot impairments no longer caused work-related limitations, despite the VA rating.

7

The ALJ satisfied his duty to explain his reasons for rejecting the VA disability determination. *Cf. Kanelakos v. Astrue*, 249 F. App'x 6, 8 (10th Cir. 2007) (reversing based on ALJ's failure to discuss reasons for rejecting VA's rating apart from noting that the standards for disability differed between the VA and the Social Security Administration); *Green v. Comm'r, SSA*, 734 F. App'x 600 (10th Cir. 2018) (same). Although Plaintiff argues the ALJ should have given the VA's rating more weight, Plaintiff "has not pointed to any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision." *Hackett*, 395 F.3d at 1172. The undersigned finds no error.

Finally, Plaintiff suggests in this section that that the ALJ could have ordered a consultative examination to determine Plaintiff's functional limitations. To the extent Plaintiff argues this failure amounts to reversible error, the argument is without merit. Generally, an ALJ has "broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of instances that may require a consultative exam). Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation.

In addition, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). Here, Plaintiff was represented by counsel at the hearing but did not challenge the sufficiency of the record at that time. Plaintiff's counsel did not request a consultative examination or suggest

the treatment record was otherwise incomplete. *See* R. 32, 58. Accordingly, the ALJ had no duty to obtain additional evidence.

**B.     The ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper.[2] In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[3]

---

[2] Plaintiff raises and repeats her consistency arguments in two separate allegations of error. For the sake of clarity and efficiency, the undersigned combines these arguments into a single discussion. In the second allegation of error, Plaintiff further contends the RFC and the hypothetical question to the VE were fatally flawed as a result of errors in the consistency analysis. ECF No. 17 at 7-10. Because the undersigned identifies no error in the ALJ's consistency analysis, there is correspondingly no error in the RFC or the hypothetical to the VE.

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, Plaintiff alleges the ALJ erred by failing to account for Plaintiff's allegations of chronic pain and fatigue, in concluding that she could perform a reduced range of light exertion work between August 31, 2015 and September 30, 2015. The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 20. He explained that the record noted a history of complaints of fibromyalgia, carpal tunnel syndrome, and back and neck pain. *Id.* The ALJ noted, however, that "there is minimal objective evidence to show that the claimant had any physical limitations from her alleged onset date of August 31, 2015 to her date last insured of September 30, 2015," and "[t]he record shows very limited findings on diagnostic testing and imaging, with normal findings on objective examination." *Id.*

As an example, the ALJ noted that a nerve conduction study performed on June 3, 2013, found only "very mild" right carpal tunnel syndrome without any evidence for cervical radiculopathy. *Id.* (citing R. 680). The ALJ also noted that Plaintiff underwent a comprehensive internal medicine examination during the relevant period that revealed normal observations, including that Plaintiff was in no acute distress, had a steady gait, and was able to tandem walk without difficulty. *Id.* (citing R. 616-619). She displayed no neurological abnormalities and had

good muscle tone and adequate range of motion in her extremities, with no evidence of musculoskeletal pain or tenderness. *Id.* (citing R. 616-619). An x-ray taken on that date noted straightened cervical lordosis with reversal cervical curvature at C6-C7, no loss of disc height, no malalignment, and skeletally intact cervical spine with stable appearance since October 7, 2011. *Id.* (citing R. 452-453). An MRI of Plaintiff's cervical spine on September 29, 2015, found only minimal degenerative changes. *Id.* (citing R. 450-451).

The ALJ noted that, on September 30, 2015, Plaintiff was referred for physical therapy for evaluation and treatment if needed. *Id.* (citing R. 394-395). On October 20, 2015, shortly after the date last insured, Plaintiff attended a physical therapy consultation with complaints of neck pain and headaches, which she reported had worsened after spending long amounts of time in front of a computer. R. 20-21 (citing R. 393). Upon examination, the physical therapist noted that her neck pain was due to poor posture when sitting, and he counseled Plaintiff on appropriate posture and gave her a home exercise program. R. 21 (citing R. 393-394). On November 24, 2015, the physical therapist noted Plaintiff had not scheduled any follow-up visits and was discharged from physical therapy at that time. *Id.* (citing R. 394).

Plaintiff does not dispute any of the above findings or point to contrary evidence in support of her allegations of disabling pain and fatigue. Plaintiff simply contends, without support, that the ALJ failed to adhere to the proper consistency evaluation criteria and improperly minimized her symptoms and impairments. Plaintiff lists out various diagnoses, assessments, findings, and impressions, many of which the ALJ noted in the decision, that she argues "reasonably cause pain and fatigue." ECF No. 17 at 7 (citing R. 400, 408, 446, 495, 619, 620, 672, 680, 866, 867). However, Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084. Contrary to Plaintiff's argument, none of the

11

cited records indicate that she could not reasonably walk or stand for a combined total of six hours in an eight-hour day, as required by light exertion work. ECF No. 17 at 8. Plaintiff additionally argues that the ALJ should have included mental limitations due to Plaintiff's pain, but this argument is also unsupported and therefore fails.

As explained above, the ALJ's consistency findings were supported by substantial findings regarding Plaintiff's statements and the objective evidence from the relevant period. The ALJ's discussion satisfies SSR 16-3p. Plaintiff points to no records, other than her own subjective statements, to support any mental or physical limitations beyond those incorporated into the RFC. *See* R. 37-40, 43, 48-50. The ALJ was entitled to compare Plaintiff's allegations to examination findings from the relevant period. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider whether conflicts exist between claimant's statements and other evidence); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (upholding ALJ's credibility finding where, despite his complaints of pain, claimant demonstrated satisfactory range of motion for joints at issue).

### C. ALJ Reasonably Considered and Addressed Plaintiff's Obesity

Plaintiff argues the ALJ committed reversible error by failing to properly assess obesity when determining Plaintiff's RFC. An ALJ must consider the effects of obesity as part of the RFC determination. *See* SSR 02-01p, 2000 WL 628049. Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.* The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. Oct. 21, 2016).

12

Here, the ALJ found that obesity was a severe impairment at step two. R. 17. At step three, he stated that he considered obesity as set forth in SSR 02-01p and considered Plaintiff's impairments "in combination with the co-existing impairment" in finding that she did not meet or medically equal a listing. R. 18. In the RFC discussion, the ALJ noted Plaintiff's obesity and her height and weight as observed in September 2015 (5'3" tall and 229 pounds), which gave her a body-mass index of 40.7. R. 21 (citing R. 616). The ALJ further noted, "no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity nor has the claimant alleged having any limitations as a result of her weight." *Id.*

Plaintiff argues the ALJ should have expressly acknowledged the connection between her obesity and her lower back pain and diabetes, citing a medical provider's notation that she should "strive to lose weight" to improve her lower back pain and another provider's notation that weight loss would "help tremendously" with her blood sugar levels. R. 376, 685. Plaintiff additionally cites treatment records indicating her providers believed Plaintiff would benefit from a weight management program or weight-loss supplements. R. 397, 406, 672. However, none of these records attributed any additional functional limitations due to obesity. By contrast, the September 2015 physical exam, which noted Plaintiff's obesity, was essentially normal and consistent with the ALJ's RFC determination. *See* R. 616-621.

The undersigned finds the ALJ's discussion of obesity was reasonable and sufficient. The ALJ clearly acknowledged and addressed Plaintiff's obesity at steps two and three, and in discussing the RFC, but nonetheless found Plaintiff could perform a reduced range of light work. Plaintiff points to no conflict or lack of development in the record regarding obesity. She also has not pointed to any medical evidence indicating her obesity resulted in functional limitations greater than those stated in the RFC. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding

13

no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with record but did not specifically mention obesity in RFC determination). The diagnosis of obesity does not necessarily translate into functional limitations. The undersigned identifies no error in the ALJ's consideration of Plaintiff's obesity.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 11, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 26th day of February, 2020.

_____
JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

14